UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **VICTORIA HALL, ex. rel. J.H., a minor,** | |
| Plaintiff, | |
| v. | No. 16 C 6137 |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,**[1] | Magistrate Judge Mary M. Rowland |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Victoria Hall filed this action on behalf of her minor son, J.H., seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. THE SEQUENTIAL EVALUATION PROCESS

To recover Supplemental Security Income (SSI), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2d 973, 976–77 (N.D. Ill. 2001). "A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).

The Social Security Administration (SSA) employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments (Listings) contained in 20 CFR pt. 404, subpt. P, app. 1. *Id.* To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate categories: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. *Id.* § 416.926a(b)(1). To functionally equal the Listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment interferes very seriously with the child's ability to independently initiate, sustain or complete activities. *Id.* § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the

child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

## II. PROCEDURAL HISTORY

On October 29, 2012, Victoria Hall filed an application for SSI on behalf of her minor child, J.H., who was born on October 1, 2007, alleging that he became disabled on June 1, 2012. (R. at 143–48). The application was denied initially and upon reconsideration, after which Ms. Hall filed a timely request for a hearing. (*Id.* at 55–65, 67–79, 94–98). On July 28, 2015, J.H. and Ms. Hall, unrepresented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 30–54).

On September 25, 2015, the ALJ denied J.H.'s request for benefits. (R. at 12–25). Applying the three-step sequential evaluation process, the ALJ found at step one that J.H. has not engaged in substantial gainful activity since October 29, 2012, his application date. (*Id.* at 15). At step two, the ALJ found that J.H.'s affective disorder and anxiety disorder are severe impairments. (*Id.*). The ALJ also found that J.H.'s asthma and attention deficit hyperactivity disorder (ADHD) are nonsevere impairments. (*Id.*). At step three, the ALJ determined that J.H. does not have an impairment or combination of impairments that meet or medically equal the severity of any of the Listings. (*Id.*). Specifically, the ALJ concluded that J.H. does not meet or medically equal either Listing 103.03 or Listing 112.04. (*Id.*). The ALJ then determined that J.H. does not have an impairment or combination of impairments that *functionally equal* the severity of any of the Listings. (*Id.* at 15–25). In making this determination, the ALJ heavily relied on the opinion of the state agency physician

on reconsideration, James Hinchen, M.D., who found that J.H. has a marked limitation in interacting and relating to others, but less than marked limitations in all of the other five functional equivalency domains. (*Id.* at 18–19, (citing *id.* at 67–79)).

The Appeals Council denied J.H.'s request for review on April 14, 2016. (R. at 1–6). J.H. now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

J.H. was born on October 1, 2007, and was four years old as of the alleged onset date and seven years old at the time of the hearing. (R. at 39, 55). He lives with his mother, older brother, and younger sister. (*Id*. at 39). He was entering second grade at the time of the hearing. (*Id*. at 40). J.H.'s behavioral and mental health issues were first documented in the record on January 9, 2013, when J.H. was evaluated by Penny Caldwell, M.S.W., L.C.S.W. at Gilead Behavioral Services. (*Id*. at 240–49). After conducting a clinical evaluation and a mental status exam, Ms. Caldwell di-

agnosed J.H. with depressive disorder, PTSD, and ADHD, and recommended weekly individual therapy. (*Id.*).

On January 10, 2013, Latrice McFarland, J.H.'s preschool teacher of four months, completed a Teacher Questionnaire regarding J.H.'s functioning in each of the six childhood functional domains. (R. at 204–11). In the second domain of attending and completing tasks, Ms. McFarland indicated obvious problems in 2 of the 13 activities and a slight problem in 1 of the 13 activities. She elaborated that J.H. "does not look at you when being spoken to. He follows single step directions but has difficulty with multi step directions." (*Id.* at 206). In all other domains, Ms. McFarland indicated slight to no difficulties in the various activity areas. (*Id.* at 205–10).

J.H. was evaluated by state agency psychologist Elaine Rado, Ph.D., on February 19, 2013. (R. at 216–19). Dr. Rado indicated that, according to J.H.'s mother, J.H. has been more aggressive since witnessing his uncle's murder two years ago, threatening to kill his brother and trying to stab his brother with sharpened pencils. (*Id.* at 218). His mother also reported that J.H. developed "marked difficulty falling asleep," "started wetting himself in daytime and nighttime," and displayed increased symptoms of hyperactivity. (*Id.*). Based on a formal mental status evaluation with J.H. and an interview with J.H.'s mother, Dr. Rado diagnosed J.H. with posttraumatic stress disorder (PTSD), depressive disorder not otherwise specified, and gave a rule out diagnosis of ADHD. (*Id.* at 216–19).

State agency consultant Thomas Chibucos, M.S., performed a speech and language evaluation on J.H. on February 20, 2013. (R. at 220–23). Testing results revealed that J.H. has average receptive, expressive, and pragmatic language development; and that J.H.'s voice, fluency, and speech sound development were within normal limits. (*Id.* at 223).

On February 20, 2013, J.H. also received a pediatric consultative examination by Daksha Patel, M.D. (R. at 225–28). Dr. Patel indicated that J.H.'s early milestones were delayed in toilet training and speech, and that J.H. has been diagnosed with bronchial asthma, which did not require Prednisone treatment. (*Id.* at 228). Dr. Patel also noted that J.H. was in prekindergarten at the time of the examination and that his school believes that he possibly has ADHD. (*Id.*).

In March 2013, nonexamining state agency consultants (Cosme Cagas, M.D., David Voss, Ph.D., and Diane Lowry, SLP) reviewed J.H.'s records and completed a Childhood Disability Evaluation Form. (R. at 55–65). They found that J.H. has severe impairments of affective disorders and anxiety disorders but did not meet, medically equal, or functionally equal a listing because he has less than marked limitations in the first, third, and sixth domains (i.e. acquiring and using information, interacting and relating to others, and health and physical well-being) and no limitations in the second and fourth domain (i.e. attending and completing tasks and moving about and manipulating objects). (*Id.* at 60–62). The state agency consultants found that J.H. has marked limitations in the fifth domain of caring for yourself. (*Id.* at 62).

J.H. underwent a consultative examination with Kenneth Levitan, M.D., on October 19, 2013. (R. at 230–32). Dr. Levitan diagnosed J.H. with behavioral problems, and gave a rule out diagnoses of underlying depression, attention deficit hyperactivity disorder, and attention deficit disorder. (*Id.* at 232). The doctor also noted that J.H. had a reported diagnosis of PTSD. (*Id.*)

On reconsideration in December 2013, non-examining state agency consultants (James Hinchen, M.D., Kirk Boyenga, Ph.D., and Carol Varney, SLP) reviewed J.H.'s records and completed a Childhood Disability Evaluation Form. (R. at 67–79). They found that J.H. has severe impairments of affective disorders and anxiety disorders but did not meet, medically equal, or functionally equal a listing because he has less than marked limitations in the first, fifth, and sixth domains (i.e. acquiring and using information, caring for yourself, and health and physical well-being) and no limitations in the second and fourth domain (i.e. attending and completing tasks and moving about and manipulating objects). (*Id.* at 74–77). The state agency consultants found that J.H. has marked limitations in the third domain of interacting and relating to others. (*Id.* at 75).

Mrs. Stecker-Rybski, J.H.'s first grade teacher, filled out a NICHQ Vanderbilt Assessment Scale on April 30, 2015, based on knowing J.H. for 30 weeks. (R. at 201). She indicated that J.H. "very often" fails to give attention to details, has difficulty sustaining attention to tasks or activities, does not follow through on instructions, and loses things necessary for tasks or activities. (*Id.*). She also concluded that J.H. "often" has difficulty organizing tasks and activities; is easily distracted,

fidgets and is forgetful; blurts out answers before questions have been completed, actively defies or refuses to comply with an adult's requests or rules; is fearful, anxious or worried; and is sad, unhappy or depressed. (*Id.*).

## V. DISCUSSION

J.H. raises two main arguments in support of his request for reversal of the ALJ's determination that he is not disabled: (1) the ALJ improperly evaluated J.H.'s and Ms. Hall's subjective symptom statements; and (2) the ALJ did not set forth a supported rationale for finding a less than marked limitation in the domain of "Caring for Yourself." (Dkt. 12 at 4).

**A. The ALJ's Evaluation of J.H.'s and Ms. Hall's Subjective Statements**

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." Social Security Ruling (SSR) 16-3p, at *2.[2] "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credit-

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

ed or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which

does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id*.

The Court finds that the reasons provided by the ALJ for rejecting J.H.'s and Ms. Hall's symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). The ALJ explains her reasons for discounting the testimony of J.H. and Ms. Hall as follows:

> I have considered the testimony of [J.H.] and his mother. To the extent that this testimony supports marked limitations in a domain other than interacting and relating with others, I find their testimony not credible. Significantly, there are no objective records to support [J.H.'s] mother's claim that he wets himself or has a history of ADHD. There is no evidence of treatment with a psychiatrist or other treatment profes-

> sional, other than a mental status evaluation at Gilead Behavior Health Services where therapy was recommended. There is no indication that medication management was recommended at this point.

(R. at 18) (citations omitted).

The ALJ's first reason that "there are no objective records to support the claimant's mother's claim that he wets himself or has a history of ADHD" is both legally and factually erroneous. As a preliminary matter, an ALJ may not discount a claimant's symptom statements "solely because they are not substantiated by objective evidence." SSR 16-3p at *5; *see Moore*, 743 F.3d at 1125 (finding that "the ALJ erred in rejecting [claimant's] testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty."). Further, the ALJ was factually inaccurate in her finding. A review of the record reveals that Dr. Rado reported that J.H. "started wetting himself" both during the day and at night (R. at 218); Dr. Patel indicated that J.H.'s early milestones were delayed in toilet training (*id.* at 228); Dr. Levitan noted that J.H. "wets on himself when asleep and awake" (*id.* at 230); and Ms. Caldwell indicated in her clinical assessment that J.H. has "regressed in his potty training" (*id.* at 240). Moreover, both Drs. Rado and Levitan gave J.H. a rule out diagnosis of ADHD and Ms. Caldwell diagnosed J.H. with ADHD. (*Id.* at 219, 232, 249). Defendant's argument that "the mere existence of a diagnosis does not establish that a claimant experiences specific functional limitations or the severity of those limitations" (Dkt. 15 at 10) is unavailing. Here, the issue is not whether the mere existence of a diagnosis proves disability but rather that the ALJ

failed to address the presence of a diagnosis when she stated that there were no objective records corroborating Ms. Hall's contention that J.H. has a history of ADHD.

The ALJ's other two reasons for discounting J.H.'s and Ms. Hall's testimony are also erroneous. The ALJ did not credit J.H.'s and Ms. Hall's statements because there was no evidence of treatment by a psychiatrist or other mental health professional other than a mental status examination at Gilead Behavioral Health Services, and that there is no indication of medication management. The first reason is factually inaccurate and the second is insufficiently explained. While the regulations direct ALJs to consider treatment history when assessing the severity of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3)(v), an ALJ must not draw negative inferences about a failure to obtain treatment "without first considering any explanations that the individual may provide, *or other information in the case record*, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Roddy v. Astrue*, 705 F. 3d 631, 638 (7th Cir. 2013) (internal quotation and citations omitted) (emphasis added); *see* SSR 16-3p, *8; *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). Both the case record and Ms. Hall's testimony indicate that J.H. had 12 sessions with a therapist at Gilead Behavioral Health and that his therapist did not prescribe medication because of his young age. Dr. Rado indicated in her psychological evaluation that J.H. "has attended therapy at Gilead Behavioral Health since November of 2012." (R. at 217). The doctor further reported that J.H. was diagnosed with PTSD, depression, and ADHD and that "[t]he therapist had preferred to work

with him on these problems before sending him to see a psychiatrist." (*Id.*). This was corroborated by Ms. Hall's testimony that J.H. was still in therapy at the time of the hearing for PTSD, depression, and ADHD but that his therapist did not want to put him on medication because he was too young. (*Id.* at 52–53). Ms. Hall also indicated in a Function Report dated September 14, 2013 that J.H. "has been to at least 12 sessions of therapy at Gilead Behavioral Health and was diagnosed with depression and PTSD." (*Id.* at 186). State agency psychological consultant David Voss, Ph.D., indicated that Gilead Behavioral Health "refuses to release [records] until after 6 months in [treatment]" and that J.H. has only been seen since November 2012. (R. at 62).

An ALJ must first explore the claimant's possible reasons for the lack of medical care before drawing a negative inference. SSR 16-3p, at *8-9. For instance, "possible reasons" an individual may not have pursued treatment include: "[a] medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual." *Id.* at *9. Here, the ALJ erred by mistakenly indicating that J.H. had received no mental health treatment except for one mental status examination; and by failing to address the reasons why J.H. was not prescribed any medications. The ALJ offered no other reasons for discounting J.H.'s and Ms. Hall's subjective symptom statements.

Defendant argues that the ALJ's subjective symptom evaluation "need not be 'flawless'; it just need not be 'patently wrong.'" (Dkt. 16 at 10, citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)). It is true that "[n]ot all of the ALJ's rea-

sons must be valid as long as *enough* of them are," *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original). However, here, the ALJ did not provide "enough" valid reasons for discounting Plaintiff's symptom statements. *See Ghiselli*, 837 F.3d at 778 ("The ALJ's unsupported judgments . . . are not the sort of credibility determinations entitled to deference."); *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) ("Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that [claimant] was incredible."); *Allford v. Barnhart,* 455 F.3d 818, 821 (7th Cir. 2006) ("The administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative.").

Under these circumstances, the ALJ's analysis of J.H.'s and Ms. Hall's testimony requires remand. On remand, the ALJ shall reevaluate J.H.'s and Ms. Hall's allegations with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

**B. Self-Care**

Next, J.H. argues that the ALJ erred in finding that J.H. had a less than marked limitation in the domain of Caring for Yourself. (Dkt. 12 at 7). The self-care domain involves how well the child maintains a healthy emotional and physical state. 20 C.F.R. § 416.926a(k). This includes how well he gets his physical and emotional wants and needs met in appropriate ways; how well he copes with stress and changes in his environment; and whether he takes care of his own health, posses-

sions, and living area. *Id.* Here, the ALJ's only explanation for her finding that J.H. has less than marked limitations in this domain is as follows: "The claimant has had some difficulty with potty training, but can dress himself and do chores. Overall, I give great weight to the opinion of State agency physician on reconsideration, and find that the claimant has less than marked limitation in the ability to care for himself." (R. at 24).

The ALJ's finding that J.H. has less than a marked limitation in the self-care domain is not supported by substantial evidence. As an initial matter, as noted above, the ALJ inappropriately discounted J.H.'s and Ms. Hall's testimony regarding J.H.'s bladder control which is relevant to the self-care domain and thus the ALJ must revisit this analysis on remand. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 489 (7th Cir. 2007) (indicating that an ALJ must explain how a claimant's testimony supports or does not support a finding in a particular domain). Additionally, the ALJ failed to discuss evidence relevant to J.H.'s ability to control and cope with his emotions as it relates to the self-care domain. Caring for yourself involves more than physical abilities to perform hygiene tasks. It also requires consideration of emotional abilities.

> [I]n "Caring for yourself," we focus on how well a child relates to self by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments. . . . The ability to experience, use, and express emotion is often referred to as self-regulation. Children should demonstrate an increased capacity to self-regulate as they develop. . . . [T]he Domain of "Caring for yourself" involves the emotional ability to engage in self-care activities, such as feeding, dressing, toileting, and maintaining hygiene and physical health.

*Hall v. Berryhill*, No. 16 C 6137 Page 16 of 19

SSR 09-7p, at *2-3. In her discussion of the self-care domain, the ALJ failed to address record evidence of difficulties with emotional self-regulation, (R. at 48–51, 183–86, 217–19, 230–32, 240–49, 257–58). In support of her finding, the ALJ only noted that J.H. has "some difficulty with potty training, but can dress himself and do chores." (*Id.* at 24). Defendant argues that the ALJ "recognized that" J.H. "threw toys, became angry and had tantrums" and "was aggressive towards others, and had behavioral problems at home and at school." (Dkt. 15 at 5). But the ALJ did not discuss this evidence as it relates to the caring for yourself domain. So this Court has no way to know if the ALJ considered evidence of emotional and behavioral problems in her assessment of this domain. *See Giles*, 483 F.3d at 488 ("Indeed, it is unclear what evidence the ALJ relied upon in finding that [N.P.] was not markedly limited in this domain. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies."); *Williams ex rel. A.W. v. Colvin*, 1:14-CV-02172, 2016 WL 880531, at *3 (N.D. Ill. Mar. 1, 2016) (remanding because the ALJ failed to address "evidence [that] strongly indicates that Claimant had not started to demonstrate consistent control over his behavior, was unable to avoid unsafe and bad behavior, and had not discovered appropriate ways to express his feelings" as it relates to the self-care domain). Likewise, the opinion of the state agency psychologist on reconsideration that the ALJ relies upon does not give any rationale for his analysis of the self-care domain except to indicate that, "[p]arent reports additional need with bathing and dressing." (R. at 76). The ALJ's failure to address evidence of difficulties with emotional self-regulation and to

"clearly identify which impairments were considered leaves [the Court] without means to review [the ALJ's] conclusion." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); *see also Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and her conclusion."). On remand, the ALJ shall re-evaluate the caring for yourself domain with due consideration to J.H.'s and Ms. Hall's testimony and the full range of medical evidence.

## C. Remedy

Plaintiff requests a reversal of the Commissioner's decision with an order to award benefits. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe*, 425 F.3d at 355 (citation omitted). That is not the case here. The ALJ failed to appropriately evaluate J.H.'s and Ms. Hall's symptom statements, and failed to properly evaluate the self-care domain. It is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

On remand, the ALJ shall reassess J.H.'s and Ms. Hall's subjective symptom statements with due regard for the full range of medical evidence. Further, the ALJ shall reevaluate J.H.'s limitations in the self-care domain, considering all of the evi-

dence in the record, including J.H.'s and Ms. Hall's testimony and shall explain the basis for her findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request for summary remand [12] is granted. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: July 24, 2017

MARY M. ROWLAND
United States Magistrate Judge